FILED

05/30/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0027

DA 16-0027

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 128

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

BRUCE ANTHONY GLASS,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DC 14-152
Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

           Chad Wright, Chief Appellate Defender, James Reavis, Assistant Appellate
Defender, Helena, Montana

      For Appellee:

           Timothy C. Fox, Montana Attorney General, Tammy A. Hinderman,
Assistant Attorney General, Helena, Montana

           William Fulbright, Ravalli County Attorney, Thorin Geist, Deputy County
Attorney, Hamilton, Montana

Submitted on Briefs:  March 29, 2017
Decided:  May 30, 2017

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Defendant Bruce Anthony Glass appeals the July 30, 2015 opinion and order by the Twenty-First Judicial District Court, Ravalli County, denying his Motion to Dismiss Due to Double Jeopardy Violation and subsequent November 19, 2015 judgment sentencing him to the Department of Corrections for five years, suspended. We address the following issue:

> *Whether the District Court erred by ruling that Glass's federal conviction for conspiracy to distribute methamphetamine did not bar a subsequent state prosecution for possession of dangerous drugs on double jeopardy grounds.*

¶2 We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 In February 2014, Glass received a package through the U.S. Postal Service from Miguel Sarabia in California. The package contained over eight pounds of methamphetamine. Glass paid for the methamphetamine by depositing $80,000 into a Wells Fargo bank account. Glass distributed most of the methamphetamine to his contacts, and kept about eight ounces for himself. In May 2014, Glass met Sarabia in California, where he paid $10,000 for sixteen ounces of methamphetamine. Glass distributed fourteen ounces to a contact, and kept two ounces for himself.

¶4 The Ravalli County Police Department received information from confidential sources that Glass was bringing methamphetamine into the county from out-of-state, and that Glass and another individual were preparing to drive between California and Montana. On June 11, 2014, Ravalli County Deputy Sheriff Gordy Jessop stopped a Toyota Sequoia pulling a trailer with nonfunctioning lights near Stevensville, Montana. Glass was driving

2

the car. Pursuant to a subsequently issued search warrant for the vehicle, officers seized fourteen marijuana roaches from the ashtray, a sunglasses case, and three firearms and ammunition, as well as other items associated with the distribution of drugs. The sunglasses case contained a bag of unidentified pills, as well as a pipe, spoon, and syringes, all with residue that tested positive for methamphetamine.

¶5 On June 23, 2014, the State arrested Glass and subsequently charged him by Amended Information with one count of felony criminal distribution of dangerous drugs (methamphetamine), in violation of § 45-9-101(1), MCA; one count of felony criminal possession of dangerous drugs (methamphetamine), in violation of § 45-9-102(1), MCA; one count of misdemeanor possession of dangerous drugs (marijuana), in violation of § 45-9-102(1), MCA; and one count of misdemeanor criminal possession of drug paraphernalia, in violation of § 45-10-103(1), MCA. Glass pled not guilty to all charges.

¶6 On October 2, 2014, the federal government charged Glass by indictment in the United States District Court for the District of Montana with one count of conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). Glass pled guilty to the conspiracy to distribute charge in federal court pursuant to a plea agreement. On May 21, 2015, the federal district court sentenced Glass to 140 months of imprisonment followed by five years of supervised release.

¶7 On June 10, 2015, Glass moved to dismiss the State's charges, arguing that the State prosecution violated Montana's double jeopardy prohibition. *See* § 46-11-504, MCA. The State conceded that the distribution of methamphetamine charge was barred, but opposed

3

Glass's motion as it pertained to the possession charges. The State argued the possession charges did not involve the same criminal objective as Glass's federal conviction for conspiracy to distribute methamphetamine and the conduct forming the basis for the possession charges was not necessary or incidental to the purpose of distributing methamphetamine. The State maintained the methamphetamine had already been consumed and was no longer available for sale. The District Court denied Glass's motion to dismiss, concluding that personal use of methamphetamine does not constitute conduct consisting of acts motived by a purpose to accomplish the distribution of methamphetamine, or that is incidental to the accomplishment of that objective.

¶8 On September 14, 2015, the State charged Glass by Second Amended information with possession of methamphetamine, possession of marijuana, possession of paraphernalia, and a new count of felony possession of a cathinone analogue, commonly known as bath salts, in violation of § 45-9-102(1), MCA. Glass entered into a plea agreement with the State, agreeing to enter an *Alford*[1] plea to a single count of felony criminal possession of dangerous drugs, and reserving the right to appeal the denial of his motion to dismiss. The District Court sentenced Glass to the Department of Corrections for five years, all suspended, to run concurrent to his 140-month federal sentence. Glass timely appealed.

---

[1] *See North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

## STANDARD OF REVIEW

¶9     A district court's denial of a defendant's motion to dismiss a charge based on statutory double jeopardy is a question of law that we review for correctness. *State v. Cech*, 2007 MT 184, ¶ 7, 338 Mont. 330, 167 P.3d 389.

## DISCUSSION

¶10    *Whether the District Court erred by ruling that Glass's federal conviction for conspiracy to distribute methamphetamine did not bar a subsequent state prosecution for possession of dangerous drugs on double jeopardy grounds.*

¶11    Montana's double jeopardy statute bars a State prosecution if that prosecution is based on an offense arising out of the same transaction as a federal conviction or acquittal. Section 46-11-504(1), MCA. The term "'same transaction' means a series of acts or omissions that are motivated by . . . a purpose to accomplish a criminal objective and that are necessary or incidental to the accomplishment of that objective." Section 46-1-202(23)(a), MCA. The term "'conduct' means an act or a series of acts and the accompanying mental state." Section 45-2-101(15), MCA. We apply a three-part test derived from § 46-11-504(1), MCA, to determine whether a subsequent prosecution is barred:

> (1) a defendant's conduct constitutes an offense within the jurisdiction of the court where the first prosecution occurred and within the jurisdiction of the court where the subsequent prosecution is pursued;
>
> (2) the first prosecution resulted in an acquittal or a conviction; and
>
> (3) the subsequent prosecution is based on an offense arising out of the same transaction [as that term is defined in § 46–1–202(23), MCA].

5

*Cech*, ¶ 13 (citing *State v. Tadewaldt*, 277 Mont. 261, 264, 922 P.2d 463, 465 (1996)). Each factor must be met to warrant dismissal of the charge. *Cech*, ¶ 13 (citing *State v. Gazda*, 2003 MT 350, ¶ 12, 318 Mont. 516, 82 P.3d 20).

¶12    There is no dispute in this case that the first two factors are satisfied. The dispositive question is whether or not the State charge of possession of dangerous drugs is "an offense arising out of the same transaction" as Glass's federal conviction for conspiracy to distribute dangerous drugs. "Offenses arise from the same transaction when 'a defendant's underlying conduct of each prosecution is motivated by a purpose to accomplish the same criminal objective.'" *Cech*, ¶ 19 (quoting *Gazda*, ¶ 20). Whether two offenses arise from the same transaction or involve the same criminal objective does not depend on the elements of the charged offenses, but rather on the defendant's underlying conduct and purpose in engaging in that conduct. *State v. James*, 2010 MT 175, ¶ 15, 357 Mont. 193, 237 P.3d 672 (State court charge of criminal endangerment and Tribal court charge of fleeing or eluding a peace officer arose out of the same transaction since both were based on the same conduct, driving a car dangerously and at high speed, and involved the same criminal objective, driving at high speed to elude capture).

¶13    Glass argues his criminal objective was to import methamphetamine from California to distribute in Montana, and to accomplish that criminal objective, he had to necessarily possess the methamphetamine before he could distribute it. Therefore, Glass contends his act of possessing methamphetamine and distributing methamphetamine is part of the same transaction for which he was convicted in federal court. Glass argues that his personal use of methamphetamine is not, in and of itself, a criminal act for which he can

be prosecuted. *See* §§ 45-2-101(59), -9-102(1) MCA. Therefore, Glass maintains his use of drugs cannot be considered a separate criminal objective from his possession of drugs for distribution because usage is not a crime. *See In re R.L.H.*, 2005 MT 177, ¶¶ 21-22, 327 Mont. 520, 116 P.3d 791.

¶14 The State argues its prosecution for criminal possession of dangerous drugs is based on Glass's personal use of methamphetamine and does not arise out of the same transaction as his federal conviction for conspiracy to distribute dangerous drugs. The State contends that the possession of the methamphetamine residue in the pipe was a separate event that involved different methamphetamine than the methamphetamine he possessed and distributed for which he was convicted in federal court. The State also contends Glass's possession of the methamphetamine in the pipe was not motivated by the same criminal objective as his possession of the methamphetamine to distribute because he possessed methamphetamine in his pipe for the purpose of inhaling it to get high and he possessed other methamphetamine as part of the conspiracy to distribute dangerous drugs for profit.

¶15 The State maintains that although Glass is correct that the offense of possession of a dangerous drug does not require the State to prove the drug was used, that does not mean the intent to inhale or ingest a dangerous drug is not a criminal objective distinct from the intent to distribute it. *See* §§ 45-9-102(1) (criminal possession of a dangerous drug) compared to -103(1) (criminal possession of a dangerous drug with intent to distribute), MCA. In that same vein, the State points out the intent to use a dangerous drug is also what makes possession of otherwise innocuous items—such as a scale or a spoon—a crime. Sections 45-9-101(1) (defining "drug paraphernalia" to include items used or intended to

7

be used in drug related crimes), -103 (defining the offense as "unlawful for a person to use or to possess with intent to use drug paraphernalia"), MCA. The State also argues that Glass's possession of methamphetamine residue in the pipe is not necessary or incidental to accomplish his criminal objective to distribute methamphetamine.

¶16    Although Glass argues his only criminal objective was to import methamphetamine from California for distribution in Montana, the record supports the conclusion that Glass had two distinct criminal objectives for possessing methamphetamine: (1) distributing the bulk of the methamphetamine he imported in violation of § 45-9-103(1), MCA; and (2) retaining possession of a lesser quantity for his own purposes in violation of § 45-9-102(1), MCA. Glass is correct that inhaling or ingesting methamphetamine is not an element of the crime of possession. But that does not mean that possessing methamphetamine with the intent to inhale it, ingest it, hang onto it for a friend, or any purpose *other* than distribution, is not a criminal objective distinct from the criminal objective of distribution. Glass confuses the absence of a specific element requiring the State to prove what a defendant intends to do with a dangerous drug he possesses in order to convict him of simple possession, with the absence of a criminal objective for merely possessing the drug.

¶17    Glass obviously could not distribute the methamphetamine he retained for his own personal use. Therefore, if Glass's only criminal objective was to import and distribute methamphetamine for profit, as he contends, the methamphetamine he used actually ran contrary to his criminal objective of distribution. Thus, Glass's possession of methamphetamine for his personal use, as evidenced by the residue in his pipe, is a distinct

8

and separate prosecutable offense pursuant to § 45-9-102(1), MCA. *See State v. Wood*, 2008 MT 298, ¶¶ 34-35, 345 Mont. 487, 191 P.3d 463.

## CONCLUSION

¶18    "Don't get high on your own supply"[2] is a long-established rule of the drug trade specifically because such conduct is inconsistent with the criminal objective of distributing drugs for profit.  To that rule, we now add the legal caveat:  "Don't get high on your own supply, 'cause double jeopardy don't apply."[3]   The District Court's denial of Glass's motion to dismiss is affirmed.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ JIM RICE
/S/ DIRK M. SANDEFUR
/S/ LAURIE McKINNON
/S/ BETH BAKER

---

[2] *See, for example, The Wire*, "One Arrest" (Blown Deadline Productions and Home Box Office July 21, 2002); The Notorious B.I.G., *Ten Crack Commandments* (Bad Boy Records 1997); N.W.A., *Dopeman* (Macola Records 1987); *Scarface* (Universal Pictures 1983).

[3] Grammar intentionally sacrificed at the altar of poetic license.