Justice Jim Rice delivered the Opinion of the Court.
***92 ¶1 Lionel Scott Ellison appeals his conviction of two counts of tampering with or fabricating physical evidence, and one count of impersonation of a public servant, after jury trial in the Thirteenth Judicial District Court, Yellowstone County. We affirm in part, reverse in part, and remand for further proceedings consistent with this Opinion. We restate Ellison's issues on appeal as follows:
1. Did the District Court abuse its discretion by admitting evidence related to Ellison's prior acts?
2. Did Ellison's counsel render ineffective assistance by failing to object, under § 46-11-410, MCA, to Ellison's conviction of two counts of tampering with or fabricating physical evidence?
3. Did the District Court err by imposing a "per count" surcharge ***93 for court information technology under § 3-1-317(1), MCA ?
FACTUAL AND PROCEDURAL BACKGROUND
¶2 On March 13, 2013, Ellison staged a crime scene in which he attempted to implicate Yellowstone County Detective Frank Fritz (Fritz), by tying the doors shut to the trailer home he shared with his parents, starting a small fire outside, and placing a knife on the ground outside the home with "Fritz" scribbled on it. The Fire Department was summoned and, during the investigation, *829 Ellison reported he saw flames from his bedroom window but was unable to escape the house because the doors had been tied shut from the outside. Ellison and his parents claimed they saw someone who looked like Fritz or his "twin" in their yard on the night of the fire, and that the same man had been at their home several times before. They later made statements in the proceeding that Fritz was responsible for starting the fire at the home. At trial, Fritz and other officers testified that Fritz was investigating another crime scene elsewhere in Billings in the hours before, during, and after the fire at Ellison's home.
¶3 After testing, the Montana State Crime Lab determined the DNA found on the ropes tied to the doors of Ellison's home matched Ellison's DNA. Ellison was arrested on July 31, 2014. Later, soon after Ellison was released on bond, Ellison made phone calls to two employers in which he falsely identified himself as Fritz and maintained that they should not hire Ellison.
¶4 Ellison was charged with one count of arson, two counts of tampering with or fabricating physical evidence, and one count of impersonation of a public servant. Before trial, Ellison moved in limine to exclude evidence of any other crimes, wrongs, or acts pursuant to M. R. Evid. 404(b). These prior acts raised by Ellison included investigations by the Yellowstone County Sheriff's Office and Park County Sheriff's Office after Ellison staged his own abductions in 2008 and 2010, a conviction for arson in 2009, a conviction for misdemeanor theft in 2010, a conviction for Partner or Family Member Assault (PFMA) in 2010, and a conviction for two counts of Violation of an Order of Protection (VOP) in 2012. Fritz had investigated the PFMA and VOP cases, leading to charges against Ellison. Following Ellison's convictions in those cases, Ellison and his parents attempted to prosecute a civil lawsuit against Fritz and the Yellowstone County Sheriff's Office, alleging intimidation and intentional infliction of emotional distress.
¶5 The District Court partially granted and partially denied Ellison's motion, ruling that evidence relating to Ellison's staged abductions in ***94 2008 and 2010, his conviction for arson in 2009, and his conviction for theft in 2010 was not admissible; but that "evidence of Ellison's past acts relating to Detective Fritz may properly be admitted," including the PFMA and VOP investigations, as well as evidence relating to the Ellisons' lawsuit against Fritz. The court reasoned:
Evidence that is inextricably linked to and explanatory of a fact in dispute may be admitted under the transaction rule in order to provide a comprehensive and complete picture of the commission of a crime [internal quotations and citations omitted].... By making these accusations [that Fritz started the fire], Ellison and his parents made the other evidence concerning Detective Fritz relevant to show the source of Ellison's animosity toward Detective Fritz, as well as Ellison's motive to concoct the crime scene. The State's evidence relating to Detective Fritz-including his investigation of Ellison for prior convictions and the Ellisons' lawsuit against him-is thus relevant not for propensity purposes, but rather to show motive and provide context, inter alia , for the reasons behind the fire, the discovery of a knife with the word 'Fritz' written on it, and Ellison's impersonation of Detective Fritz. [Emphasis added.]
¶6 At trial, the State called Fritz to testify about his prior investigations of Ellison, at which time the court gave a cautionary instruction to the jury about the proper use of evidence about other acts, stating "[t]he only purpose of admitting that evidence is to show motive and context. You may not use that evidence for any other purpose."[1] Fritz discussed an incident in which Ellison allegedly tampered with the victim in the PFMA case, explaining that Ellison "had his wife go down to the jail ... to have all of the charges dropped against him." Fritz testified both to his involvement in and the details surrounding the VOP case, stating:
*830 The victim had alleged that the defendant was holding her-her medication that she needed as a bargaining chip for her to go to the county attorney's office and have all of the charges dropped and to give a different story or a different version of events that had taken place during their partner family member assault case. Not only did he have the medication, but it was also alleged by the victim that he would not pay the power bill at the house that she was living in unless [she] went to the county attorney's office.
***95 Fritz further testified that Ellison was to meet up with his then-wife, but when he saw a patrol car coincidently parked near their meeting place, he got "spooked." In a subsequent meeting with his then-wife, Ellison refused to return her medication "unless she went and spoke with the county attorney about the partner family member assault case." Ellison's then-wife became extremely upset, leading Fritz to seek approval for Ellison's arrest.
¶7 After a three-day trial, the jury acquitted Ellison of arson, and convicted him of the other charges. Ellison appeals.
STANDARD OF REVIEW
¶8 This Court "review[s] evidentiary rulings for an abuse of discretion, which occurs when a district court acts arbitrarily without conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice." State v. Blaz , 2017 MT 164, ¶ 10, 388 Mont. 105, 398 P.3d 247 ; State v. Madplume , 2017 MT 40, ¶ 19, 386 Mont. 368, 390 P.3d 142. "To the extent an evidentiary ruling is based on a district court's interpretation of the Montana Rules of Evidence," this Court's review is de novo. Blaz , ¶ 10 ; Madplume , ¶ 19.
DISCUSSION
¶9 1. Did the District Court abuse its discretion by admitting evidence related to Ellison's prior acts?
¶10 While conceding that Fritz involvement with Ellison's prior charges was generally admissible under M. R. Evid. 404(b) as evidence of Ellison's motive, Ellison challenges the State's introduction of detailed facts underlying those cases as violative of M. R. Evid. 404(b). In answer, the State argues the evidence was properly admitted to demonstrate Ellison's "motive, intent, plan, [and] knowledge."
¶11 "All relevant evidence is admissible, except as otherwise provided by constitution, statute, [or] these rules...." M. R. Evid. 402. The trial court has "broad discretion to determine whether evidence is relevant and admissible." State v. Berger , 1998 MT 170, ¶ 39, 290 Mont. 78, 964 P.2d 725. An item of evidence is relevant if it has any value, "as determined by logic and experience, in proving the proposition for which it is offered." Berger , ¶ 39.
¶12 Under Rule 404(b), evidence of "other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." However, such evidence may be admissible to establish "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." M. R. Evid. 404(b). This list of permissible, non-propensity ***96 purposes is not exclusive and not precise; rather, the categories are "amorphous, overlapping, and dependent upon the underlying facts." Blaz , ¶ 12. In a Rule 404(b) analysis, "the distinction between admissible and inadmissible" evidence depends "on the intended purpose of the evidence, not its substance." Blaz , ¶ 12 ; Madplume , ¶ 23 (internal quotations and citations omitted).
¶13 Motive can be defined as " '[s]omething ... that leads one to act.' " Blaz , ¶ 14 (quoting Black's Law Dictionary 1172 (Bryan A. Garner ed., 10 ed. 2014) ). Fritz' prior investigations of Ellison for PFMA and VOP logically can be explained as the motive for Ellison to tie ropes to the doors of his parents' home, place a knife with the name "Fritz" in the yard, light the house on fire, and call two employers impersonating Fritz. Without Fritz' investigations of Ellison for the PFMA and VOP, Ellison may not have been arrested and charged for those previous crimes. Thus, Ellison had a viable motive to retaliate by concocting a crime scene in an attempt to frame Fritz, and the *831 evidence surrounding those investigations was admissible under Rule 404(b) for that non-propensity purpose. Ellison cites our language in Blaz cautioning against defining "motive" too broadly and "potentially encroaching upon the impermissible use of motive as propensity evidence," to argue that the District Court defined motive here too broadly in order to admit Ellison's prior convictions for PFMA and VOP. Blaz , ¶ 15. In Blaz , we concluded that admission of the defendant's prior PFMA conviction as evidence of motive had defined "motive" too broadly. Blaz , ¶ 15. Here, beyond the fact of Ellison's prior convictions for PFMA and VOP and Fritz' involvement in those cases, the circumstances surrounding those cases, including the details of Fritz' interactions with Ellison that led to the charges, provided the necessary background to understand Ellison's attempt to frame Fritz, made his guilt more likely, and was properly admitted to demonstrate this motive.
¶14 Further, the District Court admitted the contested evidence under the transaction rule, § 26-1-103, MCA, to provide context for the allegations against Ellison. We have held that it is permissible to admit "limited evidence that is 'intrinsic to' or 'inextricably intertwined with' a charged crime" for the purpose of providing "a comprehensive and complete picture of the commission of a crime." State v. Guill , 2010 MT 69, ¶¶ 28, 36, 355 Mont. 490, 228 P.3d 1152. Part of the rationale for admission of transactional evidence is that "it is difficult for a witness to testify coherently to an event if the witness is only permitted to reference the minutely defined elements of the crime." Guill , ¶ 27 (citing ***97 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure: Evidence vol. 22, § 5239, 446 (West 1988) ).
¶15 The details surrounding Fritz' and Ellison's involvement explained the circumstances underlying the charged offenses and allowed the "complete picture" to be given to the jury. Ellison's tying ropes to the doors, placing a knife with Fritz' name at the scene, setting his own house on fire, and making phone calls to employers make little logical sense, and thereby tend to erode the strength of the charges, without the context of Fritz' and Ellison's prior involvements. Relevancy of evidence lies in "logic and experience, in proving the proposition for which it is offered," Berger , ¶ 39, and here the contested evidence was logical and helped prove the charges by providing necessary context. Therefore, we conclude the District Court did not abuse its discretion by admitting the evidence.
¶16 Ellison also argues that, even if the evidence was admissible under Rule 404(b), it was inadmissible under Rule 403 because its prejudicial effect outweighed its probative value. The State responds that Ellison forfeited this issue by failing to raise it before the District Court. Ellison's motion in limine, in which he raised the evidentiary issues he argues on appeal, sought "to exclude from trial evidence of any other crimes, wrongs, or acts allegedly committed by Defendant," which he described as a "limited criminal history," on the ground that this evidence violated Rule 404(b), and also sought to exclude his 2006 arson conviction on the ground it was "so far removed, in time and material facts, from the new charges that it is irrelevant and therefore inadmissible under Rule 401."
¶17 A motion in limine may "preserve an objection for appeal provided the objecting party makes the basis for his objection clear to the district court." State v. Vukasin , 2003 MT 230, ¶ 29, 317 Mont. 204, 75 P.3d 1284 (internal quotations and citations omitted). To adequately preserve the issue, the motion in limine must be "sufficiently specific as to the basis for the objection." Vukasin , ¶ 29 (internal quotations and citations omitted). "The motion in limine must specify the evidence to which the defendant is objecting." State v. Crider , 2014 MT 139, ¶ 20, 375 Mont. 187, 328 P.3d 612. Neither Ellison's motion in limine nor supporting brief filed in the District Court specifically identified the PFMA conviction, the VOP conviction, or the facts surrounding the investigation of those charges, on which Ellison now focuses, as inadmissible under Rule 403. No other Rule 403 objection was made or raised by motion during the trial. Consequently, Ellison "failed to provide the District *832 Court with the opportunity to rule on the admissibility of evidence and to correct itself" under Rule 403, and we ***98 decline to address the issue further. Vukasin , ¶¶ 37-38 (internal quotations and citations omitted).
¶18 2. Did Ellison's counsel render ineffective assistance by failing to object, under § 46-11-410, MCA, to Ellison's conviction of two counts of tampering with or fabricating physical evidence?
¶19 Ellison argues that his counsel was ineffective for failing to object to his convictions of two counts of tampering with or fabricating physical evidence under § 46-11-410, MCA, the "multiple conviction" statute. See State v. Allen , 2016 MT 185, ¶ 10, 384 Mont. 257, 376 P.3d 791. The State argues that each of the tampering convictions arose from separate transactions and therefore did not violate the statute.
¶20 Section 46-11-410, MCA, provides that "[w]hen the same transaction may establish the commission of more than one offense, a person charged with the conduct may be prosecuted for each offense." Section 46-11-410(1), MCA. However, "[a] defendant may not ... be convicted of more than one offense" in certain circumstances, including when "one offense is included in the other." Section 46-11-410(2)(a), MCA. "Same transaction" is defined as "conduct consisting of a series of acts or omissions that are motivated by" either:
(a) a purpose to accomplish a criminal objective and that are necessary or incidental to the accomplishment of that objective; or
(b) a common purpose or plan that results in the repeated commission of the same offense or effect upon the same person or the property of the same person.
Section 46-1-202(23)(a)-(b), MCA.
¶21 When analyzing a "transaction" for purposes of § 46-11-410, MCA, a court must examine "the facts underlying the charged offenses, including the defendant's 'motivat[ion] by ... a common purpose or plan[.]' " State v. Strong , 2015 MT 251, ¶ 17, 380 Mont. 471, 356 P.3d 1078 (quoting § 46-1-202(23), MCA ). "Whether two offenses arise from the same transaction or involve the same criminal objective does not depend on the elements of the charged offenses, but rather on the defendant's underlying conduct and purpose in engaging in that conduct." State v. Glass , 2017 MT 128, ¶ 12, 387 Mont. 471, 395 P.3d 469 (citations omitted).
¶22 The State alleges that Ellison's two tampering convictions do not arise from the same transaction because Ellison engaged in the crimes with subtly distinct purposes: tying the doors shut and starting a fire to stage an arson, while inscribing and placing the "Fritz" knife to frame Fritz for the arson. The State reasons that "there is nothing to suggest that Ellison's tying ropes to the door handles of the trailer would implicate Detective Fritz in the crime," and, thus, these ***99 convictions should be treated as separate offenses. However, we view the State's framing of the facts and Ellison's purposes, in its effort to avoid application of the statute, overly nuanced and unreflective of the record as a whole. Ellison engaged in "a series of acts or omissions that [were] motivated by ... a purpose to accomplish a criminal objective and that [were] necessary or incidental to the accomplishment of that objective," and thus arose out of the "same transaction." Sections 46-1-202(23)(a)-(b), 46-11-410, MCA. The staging of an arson and the framing of another for that same arson are two offenses that were motivated by a common objective. Ellison had the same purpose and motivation for tying the ropes to the doors as he did when placing the "Fritz" knife-to stage a crime, mislead investigators, and frame Fritz. The ropes tied to the doors gave the appearance that the fire was not accidental and that someone wanted to keep Ellison and his parents from escaping. The "Fritz" knife was planted to give the appearance that it was used to cut the ropes before tying them to the doors, and to implicate Fritz.
¶23 While Ellison can be charged and prosecuted for the multiple offenses arising out of this singular transaction, multiple convictions from the transaction are prohibited under § 46-11-410(2)(a), MCA, when one offense is included in the other. An "included offense" is one which "is established by proof of the same or less than all the facts required *833 to establish the commission of the offense charged." Section 46-1-202(9)(a), MCA. The term "facts" within that definition refers to "the statutory elements of the offense, not the individual facts of the case." State v. Russell , 2008 MT 417, ¶ 22, 347 Mont. 301, 198 P.3d 271. Ellison's two tampering convictions contained the same statutory elements and, as charged, significantly overlapped factually, were both proved by the record, and were "included" in each other. See State v. Parks , 2013 MT 280, ¶ 30, 372 Mont. 88, 310 P.3d 1088.
¶24 Ellison's counsel failed to raise the multiple conviction issue, which Ellison argues was ineffective. We analyze ineffective assistance of counsel claims pursuant to Strickland v. Washington , 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), using a two-part test, under which the defendant must show (1) that counsel's performance was deficient, and (2) that counsel's deficient performance prejudiced the defendant. St. Germain v. State , 2012 MT 86, ¶ 8, 364 Mont. 494, 276 P.3d 886 (citations omitted).
¶25 This Court has held that counsel's failure to make a valid objection based on the statutory prohibition on multiple charges constitutes deficient performance under Strickland . State v. Becker , 2005 MT 75, ¶ 20, 326 Mont. 364, 110 P.3d 1. In Becker , a defendant ***100 alleged that the District Court erred by sentencing him for both possession of methamphetamine and production or manufacture of methamphetamine. Becker , ¶ 16. Applying Strickland , this Court held, in relevant part, that because the defendant's trial counsel relied only upon federal double jeopardy grounds, and failed to recognize the protections provided by § 46-11-410, MCA, his performance was deficient. Becker , ¶ 20. We further determined that counsel's deficient performance prejudiced Becker because he "would have been sentenced to a lesser term had counsel made the appropriate argument regarding the lesser-included offense under § 46-11-410, MCA, rather than under the [federal] Blockburger test." Becker , ¶ 21.
¶26 Ellison's counsel failed to make any motion in the District Court raising the application of the multiple conviction statute. As in Becker , we conclude that counsel's failure constituted deficient representation and that the error prejudiced Ellison because, had the error not occurred, Ellison would have been sentenced to only a single count of tampering. When a criminal defendant is improperly convicted of two offenses arising out of the same transaction, the remedy is to reverse the conviction for the lesser-included offense only and to remand for re-sentencing. Becker , ¶ 25. Accordingly, we reverse Ellison's conviction for the second count of tampering. The sentence imposed by the District Court is vacated and the court is ordered to resentence the Defendant after notice and hearing.
¶27 3. Did the District Court err by imposing a "per count" surcharge for court information technology under § 3-1-317(1)(a), MCA ?
¶28 Ellison argues that the District Court erred by imposing an information technology user surcharge "per count" versus "per user" under § 3-1-317(1)(a), MCA, costing Ellison $30 instead of $10. Section 3-1-317(1)(a), MCA, provides:
(1) Except as provided in subsection (2), all courts of original jurisdiction shall impose:
(a) on a defendant in criminal cases, a $ 10 user surcharge upon conviction for any conduct made criminal by state statute or upon forfeiture of bond or bail;
According to the plain language of the statute, the information technology user surcharge is a "user surcharge" to be assessed "per user," irrespective of the number of criminal counts charged. This Court has held that this statute implies a surcharge "per user upon conviction, and not per conviction of that user." State v. Pope , 2017 MT 12, ¶ 32, 386 Mont. 194, 387 P.3d 870 (emphasis in original). The State concedes this issue. The District Court erred by imposing the information technology user surcharge per count instead of per user.
***101 ¶29 Ellison's conviction for the second count of tampering with or fabricating evidence is reversed. His convictions on all other charges are affirmed. We remand for *834 further proceedings consistent with this Opinion.
We concur:
MIKE McGRATH, C.J.
BETH BAKER, J.
LAURIE McKINNON, J.
JAMES JEREMIAH SHEA, J.
DIRK M. SANDEFUR, J.

A similar cautionary instruction about the evidence was also given to the jury before it began deliberations.