FILED

04/07/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 17-0398

DA 17-0398

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 79

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

RICHARD (RICK) BRANDT,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Sixteenth Judicial District,
In and For the County of Custer, Cause No. DC 2015-59
Honorable Michael B. Hayworth, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Appellate Defender, Moses Okeyo, Assistant Appellate Defender, Helena, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Micheal S. Wellenstein, Assistant Attorney General, Helena, Montana

          Wyatt Glade, Custer County Attorney, Miles City, Montana

Submitted on Briefs: January 15, 2020

Decided: April 7, 2020

Filed:

_____
Clerk

.

Justice Beth Baker delivered the Opinion of the Court.

¶1    The State of Montana charged Richard (Rick) Brandt with six felonies stemming from a Ponzi scheme he devised that ultimately defrauded investors of $2 million.  A jury found Brandt guilty of all six counts.  The Sixteenth Judicial District Court sentenced him to a total period of sixty years with twenty years suspended.  Brandt appeals, arguing that the "multiple charges statute," § 46-11-410(2), MCA, bars his convictions and punishment for five of the six felonies.  We hold that Brandt's convictions may stand on all but one of the six charges, reverse the remaining conviction, and remand for resentencing consistent with this Opinion.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2    From 2011 until 2015, Brandt ran an ostensibly legitimate house-flipping business, Home Investors LLC.  Brandt, who was not licensed to sell investment opportunities in Montana, solicited investments from eighteen mostly elderly individuals, many of whom he knew from church or because he had served as their financial advisor or insurance salesman.  Brandt promised his investors high rates of return—ranging from ten to twenty percent—to be paid on a monthly or annual basis as he used their investments to buy houses, renovate them, and sell them at much higher prices.  He issued them "business agreements" to memorialize the terms of the investments, but no prospectus.

¶3    Brandt's business turned out to be a Ponzi scheme—a fraudulent investment arrangement in which returns to investors are paid not from any profits of the underlying venture, but from money obtained from later investors.  *See Mosely v. Am. Express Fin. Advisors, Inc.*, 2010 MT 78, ¶ 3 n.1, 356 Mont. 27, 230 P.3d 479.  Though Brandt did

2

purchase and resell several homes, after several years he ran out of money and stopped making payments to his investors. Some of Brandt's investors tried contacting him when they stopped receiving payments. At first, Brandt offered excuses or promised that payments were forthcoming, but ultimately he stopped responding. Several investors reported Brandt to local law enforcement and to the Montana Commissioner of Securities and Insurance (the "CSI").

¶4 Brandt's arrangement with Roger and Melba Losing is illustrative. Roger Losing met Brandt when Brandt sold him Medicare supplemental insurance. Roger considered Brandt a close friend. Brandt convinced the Losings, both in their late 70s at the time, to invest $50,000 in Home Investments LLC, and promised a 15% return to be paid annually. The Losings invested another $36,000 a month later. On the second investment, Brandt guaranteed a 15% return to be paid in monthly installments of $450. For a while, the Losings received monthly $450 installments, but the payments eventually stopped. Roger called, e-mailed, and wrote letters to Brandt but never heard back. In 2015, he finally contacted the local sheriff's office to report that Brandt had defrauded him and his wife. Brandt never repaid the Losings either the principal of their first investment or the promised profit.

¶5 Another elderly woman, Oleta Geis, lost approximately $88,000 to Brandt's investment scheme. Brandt knew Geis through church. Beginning in 2010, when Geis was approximately 95 years old, Geis's daughter paid Brandt $150 per month to pay Geis's bills and gave him authority to write checks from Geis's bank account. Over the next few years, Brandt wrote multiple unauthorized checks from Geis's account to Home Investors

3

LLC, overdrew Geis's account, and failed to pay her bills, including $20,000 owed to her assisted living facility. As a result, Geis's daughter had to borrow money from friends to pay the assisted living bill and prevent the facility from beginning eviction proceedings. Brandt had depleted her life savings.

¶6 Lynn Egan, Deputy Securities Commissioner at the CSI, launched an investigation into Home Investments LLC after receiving numerous similar reports of Brandt's activities. She determined that Brandt was not registered to sell securities; had not registered any of the "business agreements" as securities; was operating a Ponzi scheme; and was using his investors' money for personal use, including to pay for his own mortgage, insurance bills, and multiple trips. The investigation revealed that Brandt had solicited a total of $1,939,132 from his investors and repaid only $404,740 of their cumulative principal. The investors did not make any profit as Brandt had promised. In fact, some of his investors were forced to liquidate their remaining assets, and others no longer have any savings on which to subsist.

¶7 On August 24, 2015, the State charged Brandt by Information with the following six counts: Count 1-Exploitation of an older person (common scheme); Count 2-Theft by embezzlement (common scheme); Count 3-Failure to register as a securities salesperson (common scheme); Count 4-Failure to register a security (common scheme); Count 5-Fraudulent practices (common scheme); and Count 6–Operating a pyramid promotion scheme (Ponzi scheme) (common scheme).

¶8 The case was tried before a jury in March 2017. Mid-trial, at the District Court's direction, the State amended its proposed jury instructions on each of the six charges to

4

include a companion element of "common scheme" to reflect the offenses as charged in the Information. The jury was so instructed.

¶9 The jury found Brandt guilty of all six counts. At a separate hearing, the District Court sentenced Brandt to consecutive terms of ten years on each count, suspending a combined total of twenty years. Brandt appeals, arguing that §§ 46-11-410(2)(a) and (d) and 46-1-202(9), MCA, preclude his convictions on five of the six counts with which he was charged because they are all "included offenses" or "specific instances" of fraudulent practices. He asserts that defense counsel rendered ineffective assistance of counsel by failing to object to the sentence on double jeopardy grounds or, alternatively, that we should review his unpreserved claims under the plain error doctrine.

## STANDARDS OF REVIEW

¶10 A claim of ineffective assistance of counsel constitutes a mixed question of law and fact that we review de novo. *State v. Hooper*, 2016 MT 237, ¶ 5, 385 Mont. 14, 386 P.3d 548 (citing *Deschon v. State*, 2008 MT 380, ¶ 16, 347 Mont. 30, 197 P.3d 476). Where ineffective assistance of counsel claims are based on facts of record in the underlying case, they must be raised in the direct appeal. *Hooper*, ¶ 5 (citing *State v. White*, 2001 MT 149, ¶ 12, 306 Mont. 58, 30 P.3d 340). We may exercise our discretion to review unpreserved issues alleging violation of a fundamental right under the plain error doctrine. *See, e.g., State v. Barrows*, 2018 MT 204, ¶ 8, 392 Mont. 358, 424 P.3d 612; *State v. Reim*, 2014 MT 108, ¶ 38, 374 Mont. 487, 323 P.3d 880.

**DISCUSSION**

¶11 Although Brandt cites the Montana Constitution as one of two bases for his appeal, he provides no distinct constitutional analysis, focusing instead on the "multiple charges" statute, § 46-11-410, MCA. We resolve the issues on appeal by applying the multiple charges statute and decline to consider constitutional double jeopardy principles. *See State v. Parks*, 2013 MT 280, ¶ 22, 372 Mont. 88, 310 P.3d 1088.

¶12 Brandt argues that the District Court violated the "multiple charges" statute, § 46-11-410, MCA, when it sentenced him on all six counts with which he was charged. He contends that his fraudulent practices conviction (Count 5) subsumes the remaining offenses (Counts 1, 2, 3, 4, and 6) because all six counts are part of the same transaction, and Counts 1, 2, 3, 4, and 6 are included within or are specific instances of Count 5. He thus contends that only his conviction for fraudulent practices may stand.

¶13 Section 46-11-410, MCA, provides in pertinent part:

> **Multiple charges.** (1) When the same transaction may establish the commission of more than one offense, a person charged with the conduct may be prosecuted for each offense.
> (2) A defendant may not, however, be convicted of more than one offense if:
> (a) one offense is included in the other; . . .
> (d) the offenses differ only in that one is defined to prohibit a specific instance of the conduct[.]

¶14 We first determine whether Brandt's offenses were part of the same transaction. *Parks*, ¶ 24. Section 46-1-202(23), MCA, defines "same transaction" as:

> [C]onduct consisting of a series of acts or omissions that are motivated by:
> (a) a purpose to accomplish a criminal objective and that are necessary or incidental to the accomplishment of that objective; or

6

(b) a common purpose or plan that results in the repeated commission of the same offense or effect upon the same person or the property of the same person.

To determine whether offenses are part of the "same transaction" under § 46-11-410, MCA, we look to the facts underlying the charged offenses, including the defendant's motivation by a common purpose or plan. *State v. Ellison*, 2018 MT 252, ¶ 21, 393 Mont. 90, 428 P.3d 826 (internal quotations and citations omitted). "Whether two offenses arise from the same transaction or involve the same criminal objective does not depend on the elements of the charged offenses, but rather on the defendant's underlying conduct and purpose in engaging in that conduct." *Ellison*, ¶ 21 (citing *State v. Glass*, 2017 MT 128, ¶ 12, 387 Mont. 471, 395 P.3d 469).

¶15 *State v. Ellison* is instructive. There, Ellison staged a crime scene to frame a local detective, Fritz, for arson. *Ellison*, ¶ 2. Ellison tied the doors shut to the trailer home he shared with his parents, started a fire, and placed a knife on the ground outside the home with the word "Fritz" scribbled on it. *Ellison*, ¶ 2. The State charged Ellison with four separate counts, including two counts of tampering with or fabricating physical evidence. *Ellison*, ¶ 4. A jury found Ellison guilty of both tampering charges. *Ellison*, ¶ 7. On appeal, Ellison argued that his convictions on these two counts violated § 46-11-410, MCA. *Ellison*, ¶ 19. We agreed, concluding that the two tampering convictions—one for tying ropes to the door handles and the other for planting the "Fritz" knife—were motivated by the common objective to stage a crime, mislead investigators, and frame Fritz, and that they thus arose out of the same transaction. *Ellison*, ¶ 22.

¶16 Here, as in *Ellison*, all of Brandt's convictions were motivated by a common criminal objective: to induce individuals to invest in Home Investors LLC by making payments to him and to use those investment payments to fund his personal expenditures. What's more, as Brandt points out, "by charging all offenses as 'common scheme,' the State conceded that these six offenses were part of the same transaction." In order to convict Brandt of each offense charged, the jury was required to find the element of "common scheme" beyond a reasonable doubt. The District Court instructed the jury that "common scheme" means a series of acts or omissions motivated by a purpose to accomplish a single criminal objective or by a common purpose or plan that either results in the repeated commission of the same offense or affects the same persons or their property. This language is identical to the definition of "same transaction." That the State conceived of Brandt's offenses as part of one transaction was also apparent in its closing argument, during which it referred to Brandt's "grand plan" that "kept happening over and over again [with] [m]ore and more people [] getting affected."

¶17 The State has broad discretion in determining when to prosecute a case and what crime to charge. *See State v. Matt*, 2005 MT 9, ¶ 10, 325 Mont. 340, 106 P.3d 530. This Court is "bound by 'the State's choice in framing the charges.'" *State v. Tellegen*, 2013 MT 337, ¶ 25, 372 Mont. 454, 314 P.3d 902 (quoting *State v. Russell*, 2008 MT 417, ¶ 27, 347 Mont. 301, 198 P.3d 271). The State did not charge Brandt for distinct offenses against each separate victim; it instead elected to charge each offense as part of a common scheme. The jury was instructed that, to convict him, it had to find Brandt's conduct part of a

8

common scheme. On this record, we are convinced that the offenses as charged and proven were part of the "same transaction."

¶18 We turn now to the second step of the analysis—whether any of Brandt's offenses is "included" in another or whether any is "defined to prohibit a specific instance of the conduct" proscribed in the other. Section 46-11-410(2)(a), (d), MCA. *See Parks*, ¶ 28. "Our case law evaluating double jeopardy defenses brought under these two provisions has employed a single standard in which we consider the elements of each charge to determine whether each charge requires proof of a fact that the other does not (if so, prosecution for each charge is not statutorily prohibited)." *State v. Weatherell*, 2010 MT 37, ¶ 12, 355 Mont. 230, 225 P.3d 1256. *See also State v. Hooper*, ¶ 11. Brandt contends that Count 5, fraudulent practices (common scheme), subsumes the remaining five counts of which he was convicted. The State disagrees, arguing that all six counts contain at least one distinct element and thus are not included in each other.

¶19 An "included offense" is one established by proof of the same or less than all the facts required to establish the commission of the offense charged. Section 46-1-202(9)(a), MCA. In contrast to the "same transaction" inquiry, the term "facts" as used in § 46-1-202(9), MCA, refers to the statutory elements of the offenses, not to the individual facts of the case. *Parks*, ¶ 29 (citing *State v. Beavers*, 1999 MT 260, ¶¶ 28-30, 296 Mont. 340, 987 P.2d 371). We therefore examine whether Counts 1, 2, 3, 4, and 6 each contain the same or fewer than all the elements of Count 5 or constitute specific instances of Count 5. *See Ellison*, ¶ 23; *Parks*, ¶ 30. If so, those convictions violate the multiple charges statute and must be vacated.

9

¶20    We begin by considering the elements of Count 5, fraudulent practices (common scheme).  The District Court defined fraudulent practices in accordance with § 30-10-301(1), MCA: "It is unlawful for any person, in connection with the offer or sale [of] any security, directly or indirectly, in, into, or from this state, to willfully engage in any act, practice, or course of business that operates or would operate as a fraud or deceit upon any person."  The jury was instructed on the elements that it must find beyond a reasonable doubt to convict Brandt of Count 5.  The jury instruction—proposed by the State and not objected to by Brandt—set forth the elements of fraudulent practices following the language of the statute and further explained the third element as defined in Admin. R. M. 6.10.401(1)(u) (2008):

> (1) Brandt offered or sold a security;
>
> (2) the offer and/or sale took place in, into, or from Montana;
>
> (3) in connection with the offer or sale, Brandt engaged in conduct such as embezzlement, nondisclosure, incomplete disclosure, or misstatement of material facts, or misstatement of material facts which operated as a fraud or deceit upon a person; and
>
> (4) he acted as part of a common scheme.

¶21    We compare Counts 1, 2, 3, 4, and 6 to Count 5 in turn to determine whether they are included in or are specific instances of Count 5.

### Count 1-Exploitation of an older person (common scheme)

¶22    A person commits the offense of exploitation of an older person (common scheme) when that person purposely or knowingly exploits an older person as part of a common

scheme. Section 52-3-825(3), MCA (2009).[1] The jury was instructed that it must find the following elements beyond a reasonable doubt to convict Brandt of Count 1:

(1) Brandt exploited an older person;

(2) acted purposely or knowingly; and

(3) acted as part of a common scheme.

The jury instructions defined "exploitation" as an act taken by a person who has the trust and confidence of an older person to obtain control of or to divert to the advantage of another the ownership, use, benefit, or possession of or interest in the person's money, assets, or property by means of deception or fraud with the intent or result of permanently depriving the older person of the ownership. The jury instructions defined "older person" to mean a person who is at least 65 years of age.[2]

¶23 The offense of exploitation of an older person is not an included offense of fraudulent practices because it requires proof of an element that fraudulent practices does not: that the defendant abuses the trust of a person 65 years or older to acquire that person's property. The offense of fraudulent practices does not require a victim over 65 years old or that the defendant had gained that person's trust or confidence. Nor is exploitation of

---

[1] The offense of exploitation of an older person is now codified at § 45-6-333, MCA. The Information, filed in August 2015, alleged that Brandt committed the offenses "on or between the dates of January 2011 and June 2015." He was charged with exploitation of an older person under § 52-3-825(3), MCA. The controlling statute at the time of the offense was § 52-3-803(3) and (8) (2009), MCA, which defined an "older person" as a person who "is at least 60 years of age."

[2] The trial court instructed the jury, apparently using the 2015 version of the statute, that an "older person" is "a person who is at least 65 years of age." We use the age of 65 as instructed in this case.

11

an older person a specific instance of fraudulent practices.   The offense of exploitation of an older person does not require offer or sale of a security.   "Where each offense requires proof of a 'fact' which the other does not, there cannot be a specific instance of conduct which is included in the other offense."  *Hooper*, ¶ 11 (citing *Weatherell*, ¶ 12).   In *Hooper* we rejected the argument that elder abuse was a "specific instance" of aggravated burglary because each required proof of an element the other did not:

> First, elder abuse requires that the person abused be at least 60 years of age; aggravated burglary is not dependent upon age of the victim. Second, aggravated burglary requires that the intent to commit an offense occur within an occupied structure; elder abuse does not have to occur within an occupied structure.  Both statutes therefore require an additional element which the other offense does not require.

*Hooper*, ¶ 14.   Similar to the statutes we construed in *Hooper* and *Weatherell*, the offense of exploitation of an older person strives to protect the distinct legal norm of preventing abuse and exploitation of Montana's elderly individuals.  Section 52-3-802, MCA (2009). *See Weatherell*, ¶ 14 (concluding that defendant's convictions of PFMA and assault on a minor vindicate different legal and societal norms and thus do not violate § 46-11-410(2)(d), MCA).   Here, exploitation of an older person seeks to protect people over 65, a distinct status of victim, as reflected in the legislative purpose of criminalizing that conduct.  *See also Matt,* ¶ 15 (holding that assault with a weapon is not an offense included in assault on a peace officer).  Brandt's conviction of and punishment for the offenses of both exploitation of an older person and fraudulent practices do not violate the multiple charges statute.

**Count 2-Theft by embezzlement (common scheme)**

¶24 In contrast, the charged offense of theft by embezzlement is included within and a specific instance of the offense of fraudulent practices as defined in the jury instructions. This is made clear by the fact that the instructions listed embezzlement as one of several examples of specific conduct that would satisfy the third element of the latter. By proving embezzlement, the State proved one of those elements of fraudulent practices. Thus, embezzlement was subsumed in the charged offense of fraudulent practices. Brandt's conviction for theft by embezzlement violates § 46-11-410, MCA, and must be vacated.

**Counts 3 and 4-Failure to register as a securities salesperson (common scheme) and Failure to register a security (common scheme)**

¶25 The offenses of failure to register as a salesperson (common scheme) and failure to register a security (common scheme) are neither included within nor specific instances of fraudulent practices. It is unlawful to transact securities business in this state as a salesperson unless the person is registered with the state. Section 30-10-201(1), MCA. The jury was instructed that it must find the following elements beyond a reasonable doubt to convict Brandt of Count 3-Failure to register as a salesperson (common scheme):

(1) Brandt transacted securities business in this state as a salesperson;

(2) was not registered to transact securities business in this state as a salesperson;

(3) acted willfully; and

(4) acted as part of a common scheme.

The jury was instructed that it must find the following elements beyond a reasonable doubt to convict Brandt of Count 4-Failure to register a security (common scheme) in violation of § 30-10-202, MCA:

(1) Brandt offered or sold a security;

(2) did not register the security in the state;

(3) acted willfully; and

(4) acted as part of a common scheme.

A comparison of the elements reveals that Counts 3 and 4 are not included offenses of Count 5. Counts 3 and 4 each required proof of elements that fraudulent practices did not: that Brandt was not registered to transact securities business or had not registered the securities in Montana.

¶26 The offenses charged in Counts 3 and 4 also are not specific instances of fraudulent practices. Brandt contends that these offenses constitute conduct such as embezzlement, nondisclosure, incomplete disclosure, or misstatement of material facts, or misstatement of material facts which operated as fraud or deceit upon a person. We disagree. We have held that "[a] factual hallmark of separate offenses arises when acquittal on one charge will not affect the others." *State v. Goodenough*, 2010 MT 247, ¶ 21, 358 Mont. 219, 245 P.3d 14. Acquitting Brandt of the fraudulent practices offense as charged here would necessitate acquittal of theft by embezzlement as charged. It would not, however, work the same result on his convictions under Counts 3 and 4; those convictions arose from his failure to be licensed and his sale of unregistered securities, and each could be proven independently of any conduct in which he engaged to defraud his investors. Brandt could

14

have committed the offense of fraudulent practices even had he and the securities he sold been registered. We therefore hold that Brandt's convictions for failure to register as a securities salesperson (common scheme) and failure to register a security (common scheme) do not violate § 46-11-410, MCA.

### Count 6-Operating a Ponzi scheme (common scheme)

¶27 The State charged Brandt with Count 6, operating a Ponzi scheme (common scheme) under §§ 30-10-324(7)(b) and 30-10-325, MCA. A Ponzi scheme "consists of funneling proceeds received from new investors to previous investors in the guise of profits from the alleged business venture, thereby cultivating an illusion that a legitimate profit-making business opportunity exists and inducing further investment." *Mosely*, ¶ 3 n.1. As a result of the absence of sufficient assets to generate funds necessary to pay the promised returns, the success of such a scheme guarantees its demise because the operator must continue to attract funds, which thereby creates a greater need for funds to pay previous investors, all of which ultimately causes the scheme to collapse. *Mosely*, ¶ 3 n.1. Although fraudulent in nature, the offense of operating a Ponzi scheme requires proof of more: that "a person makes payments to investors from anything of value, including anything of purported value, obtained by later investors, rather than from any profits or other income of an underlying or purported underlying business venture." Section 30-10-324(7)(b), MCA. This is the definition that the District Court included in the jury instructions. Because these elements are not necessary to prove the offense of fraudulent practices, we conclude that Count 6 is not included within or a specific instance of the offense charged in Count 5.

15

¶28　As with Counts 3 and 4, acquitting Brandt of fraudulent practices would not affect his conviction for operating a Ponzi scheme because the latter requires proof of the payment from money invested by later investors even without proof that Brandt made any false or misleading disclosures or misstated material facts. This point is illustrated by Brandt's theory of the case. Defense counsel argued in closing that Brandt had a "business plan," and the purpose of the business was to flip houses. Brandt testified to each of the twenty houses he had bought and to the difficulties he had run into with each house. He took issue with the State's accounting method and argued that he was using investor funds for the business and not for his own purposes. Even when it was bleeding money, "he couldn't stop because of the promise that he had made to [the investors.]" Assuming for the moment that the jury had believed Brandt did nothing to mislead investors or to misrepresent his "business plan" at the time he took their investments (fraudulent practices), it still could convict him of Count 6 if it found that he used those investments—instead of profits from the house-flipping business—to pay other investors (Ponzi scheme). Brandt's conviction for operating a Ponzi scheme does not violate § 46-11-410, MCA, and may stand.

### Failure to preserve

¶29　Brandt argues that his counsel rendered ineffective assistance by failing to raise these multiple charges issues before the District Court. We analyze claims of ineffective assistance of counsel using a two-part test enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). *Ellison*, ¶ 24. The defendant must show first that counsel's performance was deficient and second that counsel's deficient performance

16

prejudiced the defendant. *Ellison*, ¶ 24. Defense counsel's failure to make a valid objection based on the statutory prohibition on multiple charges constitutes deficient performance. *Ellison*, ¶ 25 (citing *State v. Becker*, 2005 MT 75, ¶ 20, 326 Mont. 364, 110 P.3d 1). Such deficient performance is prejudicial because the defendant "would have been sentenced to a lesser term had counsel made the appropriate argument[.]" *Ellison*, ¶ 25 (quoting *Becker*, ¶ 21) (internal quotations omitted).

¶30 Brandt's counsel failed to make any objection in the District Court to his conviction and sentencing for the multiple offenses of embezzlement and fraudulent practices as charged in this case. As in *Ellison*, we conclude that this failure constituted deficient representation that prejudiced Brandt because, without the error, Brandt would have been convicted of five, rather than six, felonies.

¶31 "When a criminal defendant is improperly convicted of two offenses arising out of the same transaction, the remedy is to reverse the conviction for the lesser-included offense only and to remand for resentencing." *Ellison*, ¶ 26 (citing *Becker*, ¶ 25). Accordingly, we reverse Brandt's conviction for Count 2-theft by embezzlement (common scheme), and remand the case to the District Court for resentencing.

¶32 Having determined that Brandt's ineffective assistance of counsel claim is the appropriate vehicle to address the unpreserved multiple conviction challenges, we decline to conduct further review under the common law plain error doctrine.

## CONCLUSION

¶33 In sum, Brandt's counsel provided ineffective assistance by failing to raise the multiple convictions issue in the District Court. We affirm Brandt's convictions for

17

Count 1-Exploitation of an older person (common scheme), Count 3-Failure to register as a securities salesperson (common scheme), Count 4-Failure to register a security (common scheme), Count 5-Fraudulent practices (common scheme), and Count 6-Operating a Ponzi scheme. We reverse his conviction for Count 2-Theft by embezzlement (common scheme) as violative of § 46-11-410, MCA, and remand to the District Court for resentencing.

/S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE
/S/ DIRK M. SANDEFUR

Justice Jim Rice, concurring.

¶34     I concur in the decision of the Court. In this regard, I emphasize that my agreement to reverse Count 2 (theft by embezzlement) is necessitated, as the Court notes in ¶ 17, by the manner in which the Counts were charged in this case—not separately, but as a common scheme. A different charging scheme may well have preserved the Count 2 conviction under § 46-11-410, MCA.

/S/ JIM RICE

18

Justice Laurie McKinnon, concurring and dissenting.

¶35     I concur in the decision of the Court on Counts 1 through 4, but dissent as to Counts 5 and 6.  I would conclude that fraudulent practices is an included offense of exploitation of an older person.  I would also conclude that Count 6—operating a Ponzi scheme—is an included offense of fraudulent practices and, concomitantly, exploitation of an older person.

¶36     The Court correctly states the test for determining whether one offense is a lesser included offense of another: "we consider the elements of each charge to determine whether each charge requires proof of a fact that the other does not (if so, prosecution for each charge is not statutorily prohibited)."  Opinion, ¶ 18.  However, the Court misapplies this test when it concludes that "exploitation" of an older person does not include the fraudulent sale of a security, as set forth in the securities fraudulent practices statute, § 30-10-301(1), MCA; and similarly when it concludes, albeit implicitly, that an "older person" is not a "person," who can be fraudulently or deceitfully sold a security under § 30-10-301(1), MCA.

¶37     The Court's error stems from its overly simplistic analysis that exploitation of an older person requires proof the victim was over 65 years of age and fraudulent practices requires proof that a security was used.  As a result, the Court reasons each offense requires proof of a fact that the other does not and fraudulent practices is, therefore, not a lesser included offense of exploitation of an older person.  However, fraudulent practices in connection with the sale of a security is a *form* of "exploitation" under § 52-3-825(3), MCA (2013).  The jury instructions defined "exploitation" as an act taken to obtain control over

19

an older person's money, "by means of deception or *fraud*" (emphasis added). The jury was similarly instructed that conduct which "operated as a *fraud* or deceit upon a person" was a fraudulent practice (emphasis added). Accordingly, here, "exploitation" and "fraudulent practices" have the shared element of "fraud," with the same facts establishing the "fraud" for each offense. The offense of fraudulent practices is subsumed and becomes a lesser included offense of exploitation of an older person because the latter offense requires proof of an additional fact—the "person" who is a victim of the fraudulent sale of securities must be 65 years or older. The legal and societal norms of preventing abuse and exploitation of older persons remain protected.

¶38 The relationship of the two offenses is easily illustrated through a Venn diagram. *See Weatherell*, ¶12 ("The relationship of such charges could be illustrated by a Venn diagram of concentric, rather than merely overlapping, circles."). In my opinion, the Court fails to properly examine the facts and proscribed conduct underlying each offense, implicitly finding the offenses are illustrated by concentric circles with partially shared elements, rather than one offense subsuming or overlapping the other offense. Here, fraudulent practices and exploitation of an older person are not concentric circles, but rather are overlapping offenses. Fraudulent practices is subsumed within the larger circle of exploitation of an older person when the victim of fraudulent practices is an older person.

¶39 The Court similarly errs when it concludes a Ponzi scheme is not a fraud under the fraudulent practice statute, and, concomitantly, "exploitation" under the exploitation of an older person statute. As this Court recognized in *Mosley*, "[a] Ponzi scheme is a *fraudulent* investment arrangement in which returns to investors are paid not from any 'profits' of an

20

underlying business venture, but from monies obtained from later investors." *Mosley*, ¶ 3 n.1 (emphasis added). Accordingly, the "fraud" consists of "funneling proceeds received from new investors to previous investors in the guise of profits from the alleged business venture, thereby cultivating an illusion that a legitimate profit-making business opportunity exists and inducing further investment." *Mosley*, ¶ 3 n.1. There is no dispute that a Ponzi scheme constitutes a fraudulent practice which satisfies, and is therefore subsumed, into the statutes prohibiting fraudulent practices and exploitation of an older person. Again, as in the case of fraudulent practices, exploitation of an older person requires the additional element and proof that the victim was 65 years of age or older. As such, the offense of operating a Ponzi scheme is not a concentric circle sharing some elements of the offense of exploitation of an older person statute. Operating a Ponzi scheme is subsumed as a more specific form of exploitation. Because exploitation of an older person requires the additional element and proof that the victim was 65 years of age or older, operating a Ponzi scheme is a lesser included offense.

¶40 The Court cites *Hooper* as an illustration that because elder abuse was not a "specific instance" of aggravated burglary, fraudulent practices and operating a Ponzi scheme are not specific instances of exploitation. Opinion, ¶ 23. This comparison is fundamentally flawed and distorts both the *Hooper* and *Weatherell* analysis. In *Hooper*, the defendant was charged with elder abuse, which requires the "infliction of physical or mental injury," § 52-3-803(1), MCA, on a person over 65 years of age, § 52-3-803(8), MCA. *Hooper*, ¶ 13. Aggravated burglary is not dependent upon the age of the victim and requires the additional element of intent to break into an occupied

21

structure.  In *Hooper*, the offenses were clearly *concentric* and, although having some overlapping elements, each required proof of an additional fact not included in the other.  Reliance by the Court on *Hooper* is flawed because here the conduct constituting exploitation is fraudulent practices and operating a Ponzi scheme, both of which are subsumed into exploitation.

¶41     I would conclude that fraudulent practices and operating a Ponzi scheme are lesser included offenses of exploitation of an older person.  As to Counts 1 through 4, I concur with the Court.

/S/ LAURIE McKINNON

Justice Ingrid Gustafson joins in the Concurrence and Dissent of Justice McKinnon.

/S/ INGRID GUSTAFSON