FILED

11/10/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 18-0209

DA 18-0209

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2020 MT 281

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

MARLON DAUNTE THOMAS,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 16-1157
Honorable Rod Souza, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Appellate Defender, James Reavis, Assistant Appellate Defender, Helena, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Tammy K Plubell, Assistant Attorney General, Helena, Montana

          Scott Twito, Yellowstone County Attorney, Brett Linneweber, Deputy County Attorney, Billings, Montana

Submitted on Briefs: July 22, 2020

Decided: November 10, 2020

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Appellant, Marlon Daunte Thomas, appeals his conviction entered in the Thirteenth Judicial District Court, Yellowstone County. Thomas was convicted of two felony offenses: Aggravated Promotion of Prostitution of B.M., a 17-year-old, in violation of § 45-5-603(1)(b), MCA; and Promoting Prostitution of Z.T., a 19-year-old, in violation of § 45-5-602(1)(c), We address the following issue on appeal:

> *Did the District Court abuse its discretion when it prohibited Thomas from referring to the victim's prior participation in prostitution?*

¶2 We conclude the District Court did not abuse its discretion and affirm Thomas' conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Agent Seder is a law enforcement officer with the Department of Justice, Division of Criminal Investigation. He investigates crimes involving prostitution and human trafficking and monitors websites known to advertise these crimes, such as Backpage. Agent Seder's primary responsibility is to identify young victims through photos or terminology and rescue them.

¶4 B.M. was 17 years old when she got her own apartment. B.M.'s friend, Z.T., was 19 years old. Z.T. needed a place to live, so she moved into the apartment with B.M. Z.T. met Thomas when she left B.M.'s apartment and Thomas was outside the building in his car. Thomas asked for Z.T.'s phone number and the two exchanged numbers and texts. Later, Z.T. invited Thomas to B.M.'s apartment and Z.T., B.M., and Thomas smoked marijuana and the three had sex together.

2

¶5    After Z.T. expressed she wanted to travel but did not have the money, Thomas suggested she have sex in exchange for money. Z.T. said she did not like this idea but thought B.M. might like it as a way to make money. Thomas then met with B.M. alone and told her that Z.T. and B.M. were going to be prostitutes for him. B.M. thought Z.T. had already agreed and she did not want Z.T. to get hurt and wanted to be there for Z.T. B.M. told Thomas that she was only 17, which was "okay" with Thomas.

¶6    Thomas told B.M. that they would split the money from her "dates." B.M. fixed her hair and put on makeup, and Thomas told her what clothes to wear and how to pose for photos he was going to take. Thomas used B.M.'s phone to take the pictures and place an advertisement on Backpage. He told B.M. he wanted the ad to be "sponsored" so it would be one of the first ads on the webpage and more noticeable. He and B.M. then went to Walmart where Thomas bought a Vanilla card, a prepaid card, to sponsor the ad. B.M. immediately began receiving calls and text messages after the sponsored ad was posted and Thomas told her how to respond. After B.M. started receiving calls and text messages for "dates," Z.T. also wanted to make money, so Thomas took photos of B.M. and Z.T. posing together in lingerie. Thomas purchased bitcoins, an online currency, with a Vanilla card to place the ad of Z.T. and B.M. posing together on Backpage. Thomas used B.M.'s phone to post the ad.

¶7    Thomas made the arrangements for the "dates," told B.M. and Z.T. what to wear, gave them rides to their "dates," and waited nearby in his car until they were done. Z.T. had only one "date" and received $120, keeping $60 for herself. Thomas got the other half of the money. After this "date," who was drunk and became angry with her, Z.T. was

3

frightened and told Thomas she did not want go on any more "dates." B.M., who had only known Thomas for four days, had four "dates," which included regular intercourse and oral sex. On one occasion, B.M. was required to buy condoms out of her portion of the "date" money.

¶8 On October 27, 2016, Agent Seder saw B.M.'s advertisement on Backpage and thought B.M. looked very young. He sent a text to the phone number listed and received a response that her rate was $200 per hour. He traced the phone number and identified the girl as B.M. He then arranged to meet B.M. at the Ledgestone Motel in Billings. Thomas and Z.T. dropped B.M. off at the hotel but drove away when they became suspicious that a nearby vehicle was the police. Inside the motel, Agent Seder met B.M., who identified herself as "Marilyn." B.M. was heavily made up, wearing a bra with a see-through fish net top over it, leggings, and high heels. He took B.M. to his undercover vehicle and released her to Child Protective Services. Eventually Z.T. and B.M. were forthcoming about Thomas and his promotion of their prostitution. Thomas was located and charged with aggravated promotion and promotion of prostitution.

¶9 Thomas' first jury trial was scheduled for July 10, 2017. On July 5, 2017, the State filed its trial brief, including motions in limine. Relying on § 45-5-511(2), MCA, and Montana Rules of Evidence 404(b), 608, and 401, the State moved to prevent Thomas from introducing any of Z.T.'s or B.M.'s sexual conduct that occurred prior to their involvement with Thomas. Before jury selection on the first day of his trial, Thomas objected to the pre-trial motion, arguing that § 45-5-511(2), MCA, only applied to Part 5 crimes ("Sexual Crimes") and not Part 6 crimes ("Offenses Against the Family"). At issue was

4

Z.T. prostituting herself at the age of 16 and becoming pregnant as a result. Thomas argued Z.T.'s history was relevant because Z.T. claimed she had not known anything about prostitution and learned about it only from Thomas. The State acknowledged Z.T. was previously involved in an act of prostitution, which resulted in Z.T. becoming pregnant at 16, but clarified there were aspects of prostituting that Z.T. did not know about prior to becoming involved with Thomas.

¶10 On the afternoon of Thomas' first trial, the District Court issued a written order granting the State's motion. The order relied, in part, on § 45-5-511, MCA, concluding the statute "reflects a very important policy in Montana of preventing trials from becoming an inquest of a victim." The District Court further concluded that any past sexual conduct of B.M. and Z.T. was irrelevant in determining whether Thomas committed the alleged offenses. The order prohibited Thomas from eliciting any testimony concerning B.M. and/or Z.T.'s prior sexual conduct but permitted cross-examination should the State open the door on such matters. The first trial ended in a mistrial and a new trial was scheduled before a different judge.

¶11 Thomas' second jury trial began on November 27, 2017. The District Court did not relitigate the State's previously granted motion in limine despite Thomas urging the court to reverse the prior ruling. During trial, Agent Seder testified that he had interviewed Thomas and that Thomas admitted he posted at least one ad on Backpage, gave B.M. and Z.T. rides to their "dates," and accepted some of the proceeds B.M. and Z.T. collected. There was also testimony that he took photos of B.M. and Z.T. in lingerie. Thomas'

5

defense, however, was that he only provided technical assistance to B.M. and Z.T. and that B.M. and Z.T. wanted to prostitute.

¶12 The jury found Thomas guilty of Aggravated Promotion of Prostitution of B.M. and Promoting Prostitution of Z.T. Thomas argues on appeal that the District Court erred in granting the State's motion in limine. While the District Court's order granting the State's motion addressed prior sexual conduct of both Z.T. and B.M., on appeal Thomas' argument appears slightly more nuanced. Thomas argues the District Court's ruling prevented him from discussing Z.T.'s prostitution history as motivating both hers and B.M.'s prostitution activities. Our conclusion, however, disposes of either argument.[1]

### STANDARD OF REVIEW

¶13 A district court's ruling on a motion in limine is an evidentiary ruling and therefore reviewed for an abuse of discretion. *State v. Snell*, 2004 MT 334, ¶ 17, 324 Mont. 173, 103 P.3d 503. A district court has broad discretion when determining the relevancy and admissibility of evidence, and we will not overturn its determination absent a showing of abuse of discretion. *Snell*, ¶ 17. Abuse of discretion occurs when a district court "acts arbitrarily without conscientious judgment or exceeds the bounds of reason resulting in substantial injustice." *Larchick v. Diocese of Great Falls-Billings*, 2009 MT 175, ¶ 39, 350 Mont. 538, 208 P.3d 836. A district court is bound by Montana's Rules of Evidence and applicable statutes in exercising its discretion. *State v. Lake*, 2019 MT 172, ¶ 22,

---

[1] Thomas moved for a mistrial when the State, during closing argument, commented on whether Z.T. and B.M. were "doing it on their own" prior to Thomas' involvement. The District Court denied Thomas' motion for mistrial. It also denied Thomas' motion for a curative instruction. Thomas has not appealed the denial of either motion.

6

396 Mont. 390, 445 P.3d 1211.  Accordingly, where a district court's ruling is based on its interpretation of a statute, this Court reviews the district court's ruling de novo for correctness.  *Lake*, ¶ 22.

## DISCUSSION

¶14     A person commits the offense of promoting prostitution "if the person purposely or knowingly commits any of the following acts: (c) encourages, induces, or otherwise purposely causes another to become or remain a prostitute."  Section 45-5-602(1)(c), MCA.  Thomas was charged with having promoted prostitution of Z.T., an adult.   A person commits the offense of aggravated promotion of prostitution "if the person purposely or knowingly commits any of the following acts: (b) promotes prostitution of a child, whether or not the person is aware of the child's age."  Section 45-5-603(1)(b), MCA.  Thomas was charged with aggravated promotion of prostitution of B.M., who was a child.

¶15     Thomas argues that the District court abused its discretion when it prohibited him, under § 45-5-511, MCA, and Montana's Rules of Evidence, from referring to Z.T.'s prior participation in prostitution as a 16-year-old.   Thomas' theory of relevance is that Z.T.'s prostitution history, combined with her need for money to pay for travel, makes it more likely that Z.T., rather than Thomas, initiated her and B.M.'s prostitution plans.  Thomas maintains that this evidence went to the core of his defense and prohibiting its admission prejudiced his ability to present a complete defense.   The State contends the evidence was not relevant under M. R. Evid. 402 and was also inadmissible propensity evidence under M. R. Evid. 404(b).   We conclude the proposed evidence was inadmissible under

7

Rules 401, 402, and 404(b), and that, this being dispositive, it is not necessary to address whether § 45-5-511, MCA, applies to Part 6 crimes ("Offenses Against Family").

¶16 Evidence is relevant if it will "make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." M. R. Evid. 401. If the evidence has any value "as determined by logic and experience, in proving the proposition for which it is offered," then it is considered relevant. *State v. Ellison*, 2018 MT 252, ¶ 11, 393 Mont. 90, 428 P.3d 826. Under Rule 402, "[a]ll relevant evidence is admissible, except as otherwise provided by constitution, statute, these rules, or other rules applicable in the courts of this state. Evidence which is not relevant is inadmissible." Applying these rules, Z.T.'s prior involvement with prostitution is admissible under Rule 402 if it is relevant to the existence of any fact which is of consequence in Thomas' case, provided some other rule does not preclude its admission. Relevant evidence may include "evidence bearing upon the credibility of a witness." M. R. Evid. 401.

¶17 Here, Z.T.'s prior history of prostitution is not relevant to whether Thomas caused her to "become or remain a prostitute," and exclusion of Z.T.'s prior history did not prevent Thomas from asserting his defense. First, Thomas is claiming that exclusion of the evidence prevented him from presenting a complete defense, in this case, an alternative explanation for how the prostitution came about. However, Agent Seder's testimony indicated that Thomas admitted he posted at least one ad on Backpage, gave B.M. and Z.T. rides to and from their prostitution calls, and accepted some of the proceeds B.M. and Z.T. collected. He also took photos of B.M. and Z.T. in lingerie. Even assuming Z.T. was still

8

engaged in prostitution as a 19-year-old, Thomas' admissions to Agent Seder show, at a minimum, that he *encouraged* B.M. and Z.T. to *remain* prostitutes. The fact of consequence and at issue was whether Thomas encouraged, induced, or otherwise caused B.M. and/or Z.T. to become or remain prostitutes. Thomas' defense theory rested on his portrayal of Z.T. as already having knowledge of and experience with prostitution, and Thomas argues that he did not cause them to prostitute. He asserts that he helped set up photo shoots, posted a Backpage ad, and gave rides, but did not have the mental state of purposely or knowingly encouraging, inducing, or otherwise purposely causing B.M. or Z.T. to become or remain prostitutes. However, whether Z.T. participated in prostitution as a 16-year-old and became pregnant has no tendency to make whether Thomas encouraged, induced, or otherwise caused B.M. and/or Z.T. to participate in or remain in prostitution three years later, more or less probable. Moreover, Thomas' argument that the excluded evidence prevented him from presenting a complete defense is futile because his own admissions to Agent Seder precluded his alternative explanation.

¶18 Thomas argues the evidence was admissible under M. R. Evid. 404(b) to show Z.T.'s predisposition to engage in prostitution and/or to explain how she imparted her knowledge of prostitution onto B.M. Rule 404(b) states that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." 404(b) is not a bar to the admission of evidence; rather, the rule bars a theory of admissibility of using evidence of other crimes, wrongs, or acts to prove a person's subjective character in order to show conduct in conformity with that character

9

on a particular occasion. *State v. Dist. Court of the Eighteenth Judicial Dist.*, 2010 MT 263, ¶ 47, 358 Mont. 325, 246 P.3d 415.

¶19 Evidence of prior bad acts is prohibited under 404(b) unless the proponent can "clearly articulate how that evidence fits into a chain of logical inferences . . .," no link of which can be propensity. *State v. Daffin*, 2017 MT 76, ¶ 15, 387 Mont. 154, 392 P.3d, 150. Thomas argues the evidence was admissible under Rule 404(b) to show Z.T.'s "predisposition to engage in prostitution during times of financial strain." Thomas' theory of admissibility is, therefore, that Z.T. had a propensity to engage in prostitution when she needed the money—Z.T. was a prostitute before, making it more likely that she returned to prostitution, and she imparted such knowledge on B.M. This is clearly propensity evidence and is inadmissible under Rule 404(b). As a final matter, Z.T. was employed when she met Thomas, and other than Thomas' self-serving statements, there was no evidence Z.T. could not pay her bills.

¶20 In a slightly more nuanced argument, Thomas also argues that Z.T.'s prostitution history can explain how she imparted her knowledge and intent of prostitution onto others, such as B.M. In essence, Thomas's non-propensity Rule 404(b) theory of admissibility was that it was either Z.T.'s or B.M.'s idea for B.M. and Z.T. to engage in prostitution, not his, based on Z.T.'s prior knowledge and experience with prostitution, B.M.'s financial need or desire to engage in prostitution, and B.M.'s desire to not disappoint Z.T. by not joining her in doing so. However, while Thomas has articulated a non-propensity theory of relevance, his proffered Rule 404(b) evidence is inconsistent with his undisputed admissions that he took sexually suggestive photos of B.M. and Z.T. for use in an ad

10

promoting them as prostitutes, posted the ad as a Backpage ad, and further assisted them in engaging in prostitution by giving them rides to their prostitution "dates." Regardless of whether it may have been Z.T.'s or B.M.'s idea and decision to engage in prostitution, Thomas' admissions were admissions of facts constituting knowing encouragement and promotion of B.M. to engage in prostitution for purposes of §§ 45-5-602(1)(c) and -603(b), MCA. Inconsistent with his articulated theory of non-propensity relevance, the proffered Rule 404(b) evidence was thus not probative for the proffered purpose under M. R. Evid. 401 and 402. Under these circumstances, any arguable or tangential relevance for the asserted non-propensity purpose was further substantially outweighed by the danger of unfair prejudice and confusion of the issues in any event. Therefore, regardless of Thomas's articulated non-propensity theory of admissibility, the District Court properly excluded the evidence of Z.T.'s prior knowledge and experience with prostitution under M. R. Evid. Rules 401, 402, and 403.

¶21 We have previously stated that "[t]he purpose of a motion in limine is to prevent the introduction of evidence which is immaterial, irrelevant, or unfairly prejudicial." *Meredith*, ¶ 42 (citing *State v. Krause*, 2002 MT 63, ¶ 32, 309 Mont. 174, 44 P.3d 493). Accordingly, the authority to grant or deny a motion in limine is part of the inherent power of a court to admit or exclude evidence necessary to afford a fair trial. *Meredith*, ¶ 42. Because Thomas has not demonstrated that Z.T.'s prior involvement in prostitution or B.M.'s prior sexual conduct tends to make any fact of consequence to the determination of whether Thomas encouraged them to become or remain prostitutes, we conclude the evidence is not relevant under Rules 401 and 402. The evidence also constitutes

inadmissible propensity evidence under Rule 404(b) with no permissible theory of relevance. The District Court did not abuse its discretion in prohibiting its admission.

## CONCLUSION

¶22 We conclude that the District Court properly exercised its discretion in excluding evidence related to Z.T.'s prior involvement with prostitution under Rules 401, 402, and 404(b). We hold that the District Court did not abuse its discretion and we affirm Thomas' conviction.

¶23 Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR