FILED

11/28/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0485

DA 21-0485

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 229N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

CORY LEVI GOODMAN,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
                    In and For the County of Ravalli, Cause No. DC 19-140
                    Honorable Jennifer B. Lint, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Chad Wright, Appellate Defender, Kristen L. Peterson, Assistant Appellate
            Defender, Helena, Montana

      For Appellee:

            Austin Knudsen, Montana Attorney General, Mardell Ployhar, Assistant
            Attorney General, Helena, Montana

            William Fulbright, Ravalli County Attorney, Hamilton, Montana

Submitted on Briefs:  October 18, 2023

Decided:  November 28, 2023

Filed:

_____
                       Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Cory Goodman (Goodman) appeals from the July 27, 2021, Judgment and Commitment of the Twenty-First Judicial District Court, Ravalli County. We affirm in part, reverse in part, and remand to the District Court to give Goodman credit for the 678 days of time he served from arrest to sentencing.

¶3 On August 15, 2018, N.G.'s maternal grandmother reported disclosures of sexual abuse by N.G. to law enforcement. N.G. reported she had been "sodomized" by Goodman over a five-year period. On September 11, 2019, Goodman was charged with Incest, a felony, for knowingly having sexual intercourse with his biological daughter, N.G., when she was 7-11 years old. Goodman was also charged with Intimidation, a felony, for threatening N.G. with physical harm if she disclosed the incest. Goodman denied the allegations, and the court held a jury trial. N.G. testified along with 17 other witnesses. As part of its evidentiary presentation, the State presented evidence of Goodman's use of pornography, his past sexual relations, and evidence of his historically deficient and neglectful parenting. Prior to trial, Goodman sought, through discovery, records maintained by the Child and Family Services Division (CFSD) which he believed

contained exculpatory information. The District Court conducted an *in camera* review of the CFSD records containing years of reports made regarding Goodman, N.G., and her related household family. The court determined there was no exculpatory evidence in the records, and there were only two documents that may be relevant, but they had already been disclosed to Goodman.

¶4 The jury convicted Goodman of both Incest and Intimidation. The District Court sentenced Goodman to 100 years, none suspended, in the Montana State Prison (MSP) with a 25-year parole restriction for the Incest and 10 years to MSP, consecutive to the Incest sentence, for Intimidation. The District Court did not give Goodman credit for the 678 days he had already served from arrest to sentencing.

¶5 Goodman presents multiple issues on appeal. He claims the District Court abused its discretion by admitting evidence of his private pornography use, his adult sexual relationships, and his deficient and neglectful parenting in violation of M. R. Evid. 403 and 404(b). Goodman also claims the District Court erred by not disclosing confidential CFSD records to him after the court conducted its *in camera* review. Goodman claims the District Court erred by sentencing him based on those undisclosed records and his refusal to admit to the allegations. Finally, Goodman claims the District Court erred when it omitted 678 days of credit for the time he served from arrest to sentencing.

¶6 Because district courts have broad discretion when determining the relevance and admissibility of evidence, this Court reviews evidentiary rulings for an abuse of discretion. *State v. Passmore*, 2010 MT 34, ¶ 51, 355 Mont. 187, 225 P.3d 1229. "A court abuses its

3

discretion if it acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice." *Passmore*, ¶ 51. This Court reviews a "district court's calculations crediting time served for legality under a de novo standard." *State v. Spagnolo*, 2022 MT 228, ¶ 5, 410 Mont. 457, 520 P.3d 330.

**Evidence of Goodman's private usage of pornography and adult sexual relationships**

¶7 Goodman argues the District Court abused its discretion when it admitted evidence of his use of pornography obtained from his cell phone, testimony from Viola Goodman (Viola) that they watched "daddy does daughter" pornography together, and evidence of Goodman's adult sexual relationships with Viola and Savanna Morris (Savanna). Goodman asserts this evidence was not relevant under M. R. Evid. 401, and even if it was relevant, it was prohibited by Rule 404(b) because the State used it as propensity evidence to show Goodman had the propensity to engage in anal sex, making N.G.'s allegations more likely to be true.

¶8 The State argues the evidence that Goodman viewed pornography in N.G.'s presence is admissible under the transaction rule to show how Goodman groomed N.G. and introduced sexuality into their familial relationship. The State also claims Goodman's pornography search terms extracted from his phone and related to incest and anal sex are relevant to show he had motive to sexually abuse his young daughter and also to establish his identity as the perpetrator.

¶9 M. R. Evid. 401 states "[r]elevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action

4

more probable or less probable than it would be without the evidence." M. R. Evid. 404(b) states "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Rule 404(b) prohibits using evidence of other crimes, wrongs, or bad acts to show the defendant acted in a particular way in the past, so he is likely to have acted in conformity with that conduct to commit a current charged offense. *State v. Stryker*, 2023 MT 63, ¶ 14, 412 Mont. 1, 527 P.3d 606. Rule 404(b) does allow such propensity or conformity evidence to be admitted for other purposes, "such as 'proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" *Stryker*, ¶ 15 (quoting M. R. Evid. 404(b)). The admissibility of the evidence relies on the "intended purpose of the evidence, not its substance." *State v. Madplume*, 2017 MT 40, ¶ 23, 386 Mont. 368, 390 P.3d 142.

¶10 Here, the District Court ruled evidence of Goodman's private pornography usage was relevant to prove his motive and identity as the perpetrator of the alleged abuse, citing *State v. Colburn*, 2018 MT 141, ¶ 13, 391 Mont. 449, 419 P.3d 1196, as authority for its determination. In *Colburn*, the defendant was charged with incest against his daughter. Over objection, the State introduced evidence of Colburn's internet search history related specifically to incest and sexual abuse-related child pornography. The district court found this evidence relevant to show Colburn's motive and identity as the perpetrator under M. R. Evid. 404. This Court affirmed the district court, concluding that "[e]vidence of Colburn's pervasive and specific sexual interest in incest and sexual abuse-related child pornography

5

was relevant and probative of his identity as the perpetrator of incest against his daughter." *Colburn*, ¶ 13.

¶11 Similarly here, Goodman's specific sexual interest in incest and sexual abuse-related child pornography as shown by his search history is relevant and probative of his motive and identity as the perpetrator. It demonstrates his specific sexual interest in incest and child sexual abuse. Additionally, the search history shows the searches were made from Goodman's phone during the three months prior to N.G.'s twelfth birthday. This is relevant to show Goodman's specific sexual interest in incest and child sexual abuse manifested during the time of N.G.'s abuse and temporally links his mental state, motive, and identity during that time period to the alleged abuse. Finally, evidence of Goodman watching pornography with Viola was relevant under the same reasoning—it was probative of Goodman's specific interest in incest and child-related sexual abuse. We agree with the District Court and find it did not abuse its discretion in this regard.

¶12 Evidence of Goodman's sexual relationship with Savanna was not relevant to motive or identity but, as the District Court pointed out, provided context to explain to the jury the various relationships between the adults in the house. Additionally, Goodman's relationship with Savanna was relevant as to how Goodman's admission came about. Cyle Morris (Cyle) testified, that while Goodman and Savanna believed Cyle to be asleep in their room and immediately prior to Goodman and Savanna engaging in anal sexual intercourse, he overheard Goodman admit to Savanna that he sodomized N.G. We find that admission of these details of Goodman's adult sexual relations was harmless and did

6

not contribute to Goodman's conviction in light of the overwhelming evidence supporting Goodman's guilt, including his own admission that he had anal intercourse with N.G.

**Evidence of Goodman's prior acts as a bad father**

¶13 Goodman argues the District Court abused its discretion by admitting evidence of his deficient and neglectful bad parenting acts in violation of M. R. Evid. 404(b). Specifically, Goodman claims the State used evidence of his bad parenting—including putting A.E. into chokeholds, physically abusing N.G., neglecting N.G., forcing N.G. to watch homemade pornographic videos, and his forcing N.G. to remove her shirt in front of guests so he could pop pimples on her chest and back—for propensity purposes to show Goodman was more likely to commit the crimes alleged against him.

¶14 The State argues evidence of Goodman's deficient and neglectful parenting was admissible under the transaction rule to explain the context of Goodman's ongoing sexual abuse of N.G. Additionally, evidence of N.G.'s prior abuse and neglect allowed the jury to understand the context of her forensic interviews, her counseling, how she came to live with foster parents, and her eventual disclosure. According to the State, the jury could infer from this evidence the ongoing violence in the home contributed to N.G's fear of and delay in reporting the abuse.

¶15 The transaction rule is a statutory provision that creates an exception to the ban on the admission of prior crimes, wrongs, or bad conduct under M. R. Evid. 404(b). *State v. Haithcox*, 2019 MT 201, ¶ 17, 397 Mont. 103, 447 P.3d 452. Section 26-1-103, MCA, states "[w]here the declaration, act, or omission forms part of a transaction which is itself

the fact in dispute or evidence of that fact, such declaration, act, or omission is evidence as part of the transaction." This Court has held "it is permissible to admit 'limited evidence that is intrinsic to or inextricably intertwined with a charged crime' for the purpose of providing 'a comprehensive and complete picture of the commission of a crime.'" *State v. Ellison*, 2018 MT 252, ¶ 14, 393 Mont. 90, 428 P.3d 826 (quoting *State v. Guill*, 2010 MT 69, ¶¶ 28, 36, 355 Mont. 490, 228 P.3d 1152) (internal quotations omitted). The details surrounding a defendant's involvement can explain the circumstances underlying the charged offenses and allow the jury to see the complete picture. *Ellison*, ¶ 15.

¶16　　Here, evidence regarding Goodman's abuse and neglect as a father is inextricably intertwined with the charged incest and intimidation. Goodman's physical abuse of N.G. and A.E. shows the underlying fear and intimidation N.G. felt around Goodman, and supports the inference of why she did not immediately disclose the abuse. Similarly, evidence of Goodman forcing N.G to watch homemade pornographic videos and forcing her to remove her shirt to pop pimples on her chest and back help explain the grooming circumstances underlying the incest. These incidents are intrinsic to show how Goodman groomed N.G. and to explain the circumstances surrounding and leading up to the incest, rather than to show that Goodman had the propensity to commit incest and acted in conformity with his propensity. Thus, evidence of Goodman's prior bad acts as a father were properly admitted under the transaction rule and the District Court did not abuse its discretion in this regard.

**The District Court's reliance on the CFSD files to sentence Goodman**

8

¶17     Goodman first argues his lack of access to the CFSD files prevented him from presenting a complete defense because the files may have contained exculpatory evidence. The District Court conducted an *in camera* review of the approximate 2,500 pages of records and concluded with the exception of two documents, that CFSD's file contained no exculpatory evidence. The District Court did determine that two documents contained in the CFSD file may be relevant. The first document was a report from one of N.G.'s treating doctors about her report of sexual abuse by Goodman and another man, and the second document was N.G.'s psychological report. Both of these documents had been disclosed and provided to Goodman—the District Court provided a copy of the report by Dr. Frandsen in its Order Re: *In Camera* Review of CPS Files, and the State provided a copy of N.G.'s psychological evaluation in its discovery disclosure. On appeal, Goodman asked this Court to review the CFSD documents for exculpatory information the District Court may have missed. We agree that were there exculpatory items, they should have been disclosed to the defendant. However, after reviewing the CFSD records in full, we find there to be no exculpatory evidence, and the District Court conducted a full, fair review.

¶18     Second, Goodman argues the District Court improperly relied on the CFSD files to impose his sentence. The State argues although the District Court referenced the CFSD files in its written opinion, the oral sentence already imposed did not reference those files. The State asserts the sentence was based on the trial testimony, not on the confidential CFSD documents the court reviewed *in camera*.

¶19 At sentencing, the State requested the court sentence Goodman on the incest charge to a 100-year commitment to MSP as required by § 45-5-507(1)(5), MCA, with none of the time suspended, and impose the statutory parole restriction of 25 years. Goodman argued that if the court was going to impose the 100-year sentence, the court should suspend 60 of those years and impose only a 10-year parole restriction which would reflect average sentences for these offenses. The State further argued the court should take judicial notice of the child welfare cases of N.G. and her related household family. Regarding the intimidation offense, the State sought a 10-year commitment to MSP, with none of the time suspended, to run consecutive to the incest sentence. Goodman argued for a 5-year MSP sentence to run concurrent to the incest sentence. Both parties advocated that the court should follow Dr. Scolatti's recommendation in his psychosexual evaluation to designate Goodman as a level 2 sexual offender and require he complete sexual offender treatment.

¶20 After considering the arguments of the parties, the court explained the various deficiencies it perceived with Dr. Scolatti's psychosexual evaluation[1]—which will be discussed further below—and then proceeded to sentencing. In providing some of the reasoning for its sentence, the court explained:

> Mr. Goodman raised his victim in a parenting void. She never learned to love
> or support or what boundaries were. She even, as stated in her own victim

---

[1] The District Court specifically noted that Dr. Scolatti considered only limited collateral information so that his assessments presumably relied only on the self-reporting by Goodman. The report did not take into consideration that Goodman had been convicted at trial, and the court noted that although Dr. Scolatti indicated he had reviewed 155 pages of documents, the District Court did not know what those documents were. As such, the District Court expressed concern that there was a lack of complete source materials that went into Dr. Scolatti's analysis which, for the District Court, lessened the weight of Dr. Scolatti's conclusions.

statement, took on the role of protecting her own siblings because there was no one else there to protect them. And she knew what you were capable of, and that was using anyone you could to get what you want . . . . Your continued lack of remorse and continued denial of your criminal acts and the enormous damage that you wreaked leads to the inevitable conclusion that you're not fit for society.

The District Court then pronounced, "today [Mr. Goodman] you're sentenced on the fact that a jury of this county found that you raped your daughter and you intimidated her to try to force her to never tell." From the discussion at sentencing and the court's pronouncement of sentence, it is clear the court primarily relied on the trial evidence as to the nature and circumstances of the offenses and the jury's conviction of Goodman, rather than on the CFSD records, in sentencing Goodman. The District Court merely took note of the existence of the voluminous CFSD files in addition to the evidence presented at trial when it imposed its sentence. To the extent the District Court may have relied on information derived through its *in camera* review of the CFSD records, such reliance was harmless error in light of the overwhelming evidence supporting Goodman's guilt, including his own admission that he had anal intercourse with N.G. The trial evidence alone supported the sentence imposed without any consideration of the CFSD records.

**The District Court's reliance on Goodman's refusal to admit the offenses for sentencing**

¶21 Goodman argues the District Court relied on his refusal to admit the offenses when it sentenced him "based on his 'utter lack of remorse and continued denial of his criminal acts.'" According to Goodman, the District Court's reliance on his maintaining his own innocence violated his due process rights.

¶22 The State asserts Goodman's arguments are misplaced. The State argues the District Court relied on Goodman's refusal to admit the allegations in its determination to not rely on the psychosexual evaluation done by Dr. Scolatti in assessing Goodman's sexual offender level designation. According to the State, the District Court was dubious of Dr. Scolatti's assessment results because they were based primarily on Goodman's self-reports and did not consider significant collateral information, including the jury's verdict; whereas, the court's sentence was based on "the egregious nature of the offenses and the lifelong harm caused to the victim."

¶23 The Fifth Amendment of the United States Constitution and Article II of the Montana Constitution protect a defendant's right against compelled self-incrimination. U.S. Const. amend. V; Mont. Const. art. II, § 25. A court may not impose a greater sentence when a defendant exercises his/her constitutional right against self-incrimination. *State v. Shreves*, 2002 MT 333, ¶ 20, 313 Mont. 252, 60 P.3d 991. While a lack of remorse is an appropriate factor to consider at sentencing, "a sentencing court may not draw a negative inference of lack of remorse from the defendant's silence" or punish the defendant for maintaining his innocence. *Shreves*, ¶ 22.

¶24 Here, the District Court stated in its Judgment and Commitment "[d]efendant's utter lack of remorse and continued denial of his criminal acts, and the enormous damage he wreaked leads to the inevitable conclusion that he is not fit for society." This shows the court considered Goodman's lack of remorse as one factor. However, the District Court also based Goodman's sentence on evidence properly admitted at trial, recommendations

12

made by counsel, Goodman's criminal history, the extent of harm caused to the victim, and the requirements of § 45-5-507(5), MCA. Under § 45-5-507(5), MCA, "[i]f the victim was 12 years of age or younger and the offender was 18 years of age or older at the time of the offense, the offender [] shall be punished by imprisonment in a state prison for a term of 100 years." Here, N.G. was under 12 years of age at the time the offenses were committed and Goodman was well older than 18. Additionally, the sentence was not inconsistent with the nature of the offense and evidence admitted at trial. Further, the District Court explicitly stated:

> Contrary to [the State's] argument that Defendant should be sentenced based upon his continued denial, Defendant is sentenced based upon the fact that a jury of this county found that Defendant raped his daughter and intimidated her to try and force her to never tell. The circumstances of this case are why that statute was enacted.

It is clear the District Court did not use Goodman's refusal to admit the allegations as a basis for his sentence, and we find no error by the District Court in this regard.

**Designation as a level 3 sexual offender**

¶25 Goodman argues the District Court erred by designating him as a level 3 sexual offender when his psychosexual evaluation recommended he be designated a level 2 offender. Goodman claims the court based its level 3 designation on his refusal to admit to the offenses. Section 46-23-509, MCA, states "[u]pon sentencing the offender, the court shall: (a) review the psychosexual evaluation report, any statement by a victim, and any statement by the offender; (b) designate the offender as level 1, 2, or 3; and (c) designate a level 3 offender as a sexually violent predator." Although the statute requires the court to

13

review the psychosexual evaluation, it does not require the court to follow the evaluation's recommendation.

¶26 Here, the District Court explained why it did not give Dr. Scolatti's recommendation regarding offender level designation any weight—it was based primarily on Goodman's self-report and did not fully consider collateral information including the jury's finding of guilt. The court based the level 3 designation on the egregious nature and circumstances of the incest offense—anal rape of his daughter over the course of several years—and the substantial harm caused to the victim. Given the court's rationale in assessing Goodman's offender level, the District Court did not act arbitrarily without the employment of conscientious judgment or exceed the bounds of reason.

**The District Court's omission of 678 days of credit for time served**

¶27 Goodman argues the District Court illegally sentenced him without giving him credit for the 678 days of jail time he served prior to sentencing in violation of § 46-18-201(9), MCA. Under § 46-18-201(9), MCA, a district court shall provide credit for time served before trial or sentencing when the sentence includes incarceration in a detention facility or state prison. The State concedes Goodman should receive credit for the 678 days he served from arrest to sentencing.

¶28 Accordingly, we find the District Court erred by not giving Goodman credit for the 678 days he served from arrest on August 31, 2019, to his sentencing on July 8, 2021, and we remand to the District Court to do so.

¶29     We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions.  In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶30     Affirmed in part, reversed in part, and remanded to the District Court to give Goodman credit for the 678 days of time he served prior to sentencing.

/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ DIRK M. SANDEFUR
/S/ JIM RICE